The People, *ex rel.*, THOMAS VERMULE, and others, Respondents, v JOHN BIGLER, and others, Appellants.

The Act of February 4, 1851, removing the Seat of Government to Vallejo, declared to be constitutional.

This Act operates as an absolute removal, and cannot be defeated by the breach of subsequent conditions.

After the first removal, a *majority* of the Legislature might at any time remove the Capital.

The motives of the Legislature in passing a law will not be inquired into.

The Legislature may exercise all powers not prohibited to them by the Constitution.

City of Sacramento declared to be the Capital of the State.

APPEAL from the District Court of the Third Judicial District, Santa Clara County.

The action was an application for a mandamus to compel the Secre-

tary of State, Treasurer, and Controller, to keep their offices at the town of San Jose, upon the allegation that it was the Seat of Government. The Court granted a peremptory writ, and defendants appealed.

The points in controversy will be found distinctly stated in the opinion of the Court.

*Wm. M. Stewart* (acting Attorney General) for Appellants.

*McKinney & French* for Respondents.

No briefs on file.

MURRAY, C. J., and BRYAN, J., delivered separate opinions. HEY-DENFELDT, J., delivered a dissenting opinion.

MURRAY, C. J. It is not my purpose to examine all the errors assigned in this case, or to decide whether the remedy resorted to is the proper one.

This suit is brought for the purpose of determining, judicially, whether San Jose or the City of Sacramento is the capital of the State, and as this question must be sooner or later passed upon by us, in order to settle definitively the rights and duties of the parties litigant, as well as for the information of the other branches of the government, and the final disposition of a vexed question of a public character, we deem it best at once to come to the point.

By the Act of the 25th of March, 1854, requiring the sessions of the Supreme Court to be holden at the Capital of the State, it became the duty of this Court to ascertain, for its own action, the locality of the Seat of Government.

In the exercise of this proper inquiry, a majority of the Court were of the opinion, that the Capital never had been removed from San Jose in accordance with the provisions of the Constitution. From the opinion of the Court so expressed at that time, I differed; but as it was the judicial ascertainment of a fact necessary for its own government, I felt that I had discharged my duty in the premises, and that the opinion of the majority so expressed was not only binding on me as one of the members of the Court, but binding also upon the public. A different case is now presented. The conclusion to which this Court first arrived

was not a judicial one, arising in a case properly belonging to its appellate jurisdiction; and however much we may have been disposed to regard that opinion as a finality, so far as the Court itself was concerned, it could not have been extended to other cases coming before us for review as an appellate Court.

While I would not have considered myself at liberty to interfere with this question, simply, because by a different organization of the Bench the former opinion has become the minority one, in this case there can be no impropriety in determining the question now for the first time presented to us as an appellate tribunal.

No one can appreciate the necessity of the doctrine of *stare decisis* more highly than myself, or be more willing to be governed by it. Without a proper adherence to the rule, no certainty of adjudication can ever be attained, and confusion and doubt must invariably follow every change of the Bench that occurs by death or otherwise.

I have already said that this is not a case in which that rule can be invoked, and I am happy to add, that my associate who differs with me in the main conclusion agrees with me upon this point. Having before expressed my opinions in full on this subject, and seeing n o rea- son to alter or change them, I shall simply confine myself to a recapitulation of the grounds then taken.

The first section of the second Article of the Constitution provides, that " the first session of the Legislature shall be held at the Pueblo de San Jose, which place shall be the permanent Seat of Government until removed by law, *provided, however*, that two-thirds of all the members elected to each house of the Legislature, shall concur in the passage of the law."

During the first session of the Legislature, M. G. Vallejo submitted a proposition to give to the State a certain amount of money and land, for public buildings, provided the permanent Seat of Government should be located at Vallejo. For the purpose of ascertaining the sentiments of the State, in reference to the location, an election was directed, which resulted in the selection of Vallejo by a large majority. At the next session of the Legislature, an Act was passed for the permanent location of the Capitol at Vallejo, the provisions of which are as follows:

"An Act for the permanent location of the Seat of Government.—

4

That from and after the close of the present session of the Legislature, the City of Vallejo, situated upon the Bay of Napa and Straits of Carquinez, shall be the permanent Seat of Government for the State of California; *provided,* M. G. Vallejo shall submit a satisfactory bond to the Legislature, to be approved by the Legislature and Governor, for the performance of the proposition submitted by the said M. G. Vallejo to the Legislature. The bond to be entered into by the said M. G. Vallejo with the Governor of the State, *provided,* That the said M. G. Vallejo shall provide, for the space of three years, a State House, and other offices of State, equal to or better than those now occupied, without expense to the State; *and provided further,* That if the said M. G. Vallejo shall fail or refuse to comply with the terms of his proposition, in whole or in part, then this Act to be void."

It is now contended that this Act is void upon its face; in other words, that it appears from the Act that the Legislature located the Seat of Government at a particular place, in consequence of the amount agreed to be paid by said Vallejo; that it amounts to a sale of the Seat of Government, and the Act is *unconstitutional.* It is furthermore contended, that the conditions of the removal have not been complied with, and that upon the breach of the condition, the Seat of Government, by operation of law, reverted or returned to San Jose.

On examination of the Constitution of the State, it will be observed that there is no limitation upon the power of the Legislature to locate the Seat of Government, " except as to a *two-thirds vote.*" It belongs to and rests in the sound discretion of the Legislature itself, and is not subject to the control of the judicial department of the Government. I cannot assent to the proposition, that because the Legislature has provided in the " Act" removing the Capital to Vallejo, that the said Act shall be void, unless certain stipulations are complied with; that we are bound to infer the Legislature did not exercise their judgment as to the best place for a location. I know of no authority this Court possesses to inquire into the motives of the Legislature in the passage of any law; on the contrary, it has been uniformly held, that they could not be inquired into. What difference is there in this Court attempting to investigate the conduct of individual members of the Legislature, for the purpose of declaring a law void, and in assuming, from the

letter of the statute itself, that the Legislature was actuated by other than correct motives.

Admitting the sole inducement for the removal was the amount to be received by the State, and that the site chosen was not the best one that might have been selected, (an inference which cannot be fairly drawn from the Act itself,) what provision is there in the Constitution of our State to prohibit such a bargain? I understand the rule of construction to be, that the Legislature may exercise all powers not prohibited to them by the Constitution; except, perhaps, in the single case of acts contrary to natural justice, and even this exception has more foundation in the speculation of moralists, than the decisions of wise jurists. When once a Court undertakes to determine where the line of proper legislation leaves off, it will find itself involved in doubts and difficulties, which can only be solved by the preponderance of the good or evil propensities of the Judges who attempt to define it; a standard by no means certain or satisfactory. It will be vain to search for any provision which would prohibit the State from availing herself of private bounty; and the exercise of this power by the Legislature is neither so enormous in its consequences, nor so greatly at war with the spirit of our institutions, as to call for our interposition.

The Legislature, by the constitutional vote, has passed the Act of removal, and it would seem as though the fact that they had secured to our State, then in its infancy, without funds or credit, so munificent a donation, ought not to be regarded as a wanton abuse of Constitutional power.

If, however, the Legislature had no authority to annex any conditions to the removal, or enter into any contract by which the State could be benefitted, in consequence of the location of the Seat of Government, then so much of the Act as refers to and fixes the condition, is unconstitutional. Strike this portion of the section out, and still there would remain the Act of the Legislature, fixing the Seat of Government at Vallejo.

In answer to the second point, it will be observed, that the Act of February 4, 1851, is absolute in terms, and but one of the conditions was to be complied with, viz: giving satisfactory bond before the Act should go into effect. The language is, that " after the present session of the Legislature, the permanent Seat of Government shall be located

at Vallejo," &c.   It can hardly be supposed the Legislature intended to do so unwise an act as to remove the Seat of Government to Vallejo, attended, as it necessarily would be, with great expense to the State, if by operation of law it would revert to San Jose upon the non-compliance of Gen. Vallejo with his contract; to do so would be to suppose the Legislature guilty of unparalleled recklessness or stupidity. The very object of exacting the bond was to cover any loss which the State might sustain by his failure to provide temporary buildings, while the provision for the Act becoming void on the non-compliance with its conditions, was doubtless intended for the purpose of releasing the State from any fictitious claim which might be brought against her should the Capital afterwards be removed to any other place.

This was the construction given by the succeeding Legislature, and has been acquiesced in ever since.   It may not be improper to inquire how we are to know that Gen. Vallejo has not complied with the provisions of his contract, and if we can take judicial notice of the fact. The only evidence we have, is that furnished by the action of the Legislature voluntarily relinquishing all claim against him.   This is the first notice, and it would hardly be contended that the State could not relieve him from his obligation, without subjecting itself to the public expense and inconvenience of a removal of the Seat of Government. Four sessions of the Legislature have passed upon the constitutional question now raised, and given to it a practical as well as legislative construction.

Three sessions of the Legislature have been held by virtue of the Act of February 4, 1851.   Vested rights have grown up under its provisions, and unless it be constitutional, I hesitate not to say, that by every rule of law, the legislation of the last two years is a dead letter on the statute books.

I hold, that the place is an essential ingredient to correct legislation, as much so, as it is to a proper administration of justice; and if a decision would be *coram non judice*, because the Court was not holden at the place appointed by law, by a parity of reasoning, the acts of a legislative body done at any other than the appointed place must be equally void.   That there can be a *de facto* Seat of Government, or that the reason which would operate to cause and render obligatory

the acts of a *de facto* officer, can apply to this case, is a proposition I cannot assent to.

For these reasons, I am of opinion, First, That the Act of February 4, 1851, is not unconstitutional, but on the other hand was a proper exercise of legislative power and discretion, with which we cannot interfere.

Second, That said Act operated as an absolute removal, which was not defeated by the breach of subsequent conditions.

Third, That after the first removal, a majority might remove, and that a majority of both Houses of the Legislature having passed an Act to that effect, the City of Sacramento is, by law, the legal Capital of the State.

Judgment reversed, with costs.

BRYAN, J.   In this cause, it will not be necessary to notice the numerous points made by counsel as to the regularity of the proceedings below and as to the selection of the remedy, whilst entertaining the views which I do in regard to other more vital questions connected with the Constitution and laws bearing upon the subject of the Seat of Government.   Differing with my predecessor upon the Bench in the conclusions he formerly arrived at in the decision upon this question, and the majority of the Court being thus changed from one opinion to another, I deem it but proper that I should submit my views of the different bearings of the question of the present location of the Seat of Government, in addition to those already so clearly expressed by the Chief Justice of this Court.

There are but three questions necessarily to be answered in determining the location of the Seat of Government.

First, The Act of 1851, removing the Seat of Government from San Jose to Vallejo, having been passed by the constitutional majority, is there anything in the Act itself making it unconstitutional?

Second, If the law of 1851 was a valid law, did any failure upon the part of General Vallejo to perform the conditions imposed upon him by that law, work, of itself, a reversion of the Seat of Government to San Jose, without further legislative action?

Third, If the law was constitutional, and a failure to perform the conditions would not, *per se*, operate as a removal of the Seat of Gov-

ernment back to San Jose, were the subsequent laws passed for the removal of the Seat of Government valid, having been passed but by a majority vote ?

It is objected that the Act of 1851 bears evidence upon its face that the location of the Seat of Government at Vallejo was a matter of bargain and sale, was opposed to good morals, and was therefore in violation of the spirit of the Constitution, and void.

It has been a matter of grave discussion with the most eminent jurists as to how far a Court should go in interposing its authority, if it had any authority at all, in pronouncing void Acts of a Legislature upon the ground that they were opposed to the public morals. The weight of opinion appears to be, as it would seem reasonable it should be, that the members of the Legislature that passed the law were the best judges of its moral tendency, and that Courts should so interpret the law, as to relieve it of any vicious meaning it might possess; presuming, as a necessary consequence, that the Legislature could not have intended purposely to pass an Act immoral in its character. I cannot find anything in the Act of 1851 removing the Seat of Government from San Jose to Vallejo, which, to my mind, is opposed to good morals, or which evinces recklessness of any character whatsoever. The Legislature saw fit to remove the Seat of Government to Vallejo, and make it permanent there, provided General Vallejo erected suitable buildings for the convenience of the Government, and performed other conditions named in the law.

As the Seat of Government was not a property upon which any individual rights could be based, the Legislature having control over the subject matter, by a two-thirds vote, removed to Vallejo, but, before removing, sought to save to the people at large, the expense of purchasing land upon which to locate the public buildings, and the cost of the erection of the buildings themselves. If this legislation was exceptionable, it does not, to my mind, display that reckless disregard of the rules of morality which would justify this Court in exercising a doubtful authority in pronouncing the law unconstitutional.

Again, deeming the law of 1851 a valid law, the objection is urged that the conditions of the law were not complied with, and that therefore by the terms of the Act itself it was void, and the Seat of Govern-

ment remained at San Jose, where it was first placed by the Constitution. Under the Act of 1851, the State Government was located at Vallejo; the different departments of the Government were there, and there they performed their various functions; and the succeeding Legislature treated that as the legal Seat of Government until another removal was had. If General Vallejo failed to comply with the provisions of the Act of 1851, the State Government was no longer bound to remain at Vallejo, and the Act was void as to any rights Vallejo might have acquired under it; but, could this failure to comply with the conditions of the law, of itself, re-establish the Seat of Government at San Jose?

I think not. The law was passed by the constitutional vote, a removal was had, the Government was actually sitting at Vallejo, and any failure upon the part of General Vallejo to fulfil the conditions of the law, allowed the Government to treat the contract with him as a nullity, and to remove whenever they chose from that place. The law in that event was void as to Vallejo's right to the Seat of Government; but, was the *Government* a *void* whilst it remained at Vallejo? The Government certainly existed whilst its officers remained at Vallejo, then how destroy the effect of the removal under a valid law, and compel a return to San Jose, unless the department of the Government that passed the law under which the removal was made took further action upon the subject, and ordered a removal back to San Jose? I deem it a sound rule of construction, to hold no Act of the Legislature *entirely void*, unless plainly repugnant to the Constitution. The Act of 1851, whilst in force, justified the removal from San Jose to Vallejo— it was then a legal removal, and the Seat of Government having been removed by law, it could not be supposed to move back by the mere operation of a failure of a party named in the law to fulfil its conditions. If there was any doubt upon my mind as to the force of this reasoning, the construction put upon the Act of 1851, by several successive legislative bodies, would have some weight in determining its meaning. The Legislative Department of the Government has continuously regarded that law only as void as to the further retention of the Seat of Government at Vallejo, and has uniformly treated the act of removal under it as valid. This legislative exposition, I think,

should have its due weight with the Court, when it does not clearly appear that it is repugnant to the Constitution, or palpably wrong.

I, therefore, hold that the law removing the Seat of Government from San Jose was valid, and that any failure in the performance of its conditions did not defeat the Act of removal, and cause the Seat of Government to revert to, or remain in, San Jose; but, that such failure, if it occurred, as is argued, simply discharged the Government from any obligation to remain at Vallejo. The subsequent removals of the Seat of Government having been effected by a majority vote of both branches of the Legislature, I deem to have been regular, since I regard it as clear that the Legislature of the State has full power to legislate upon all proper matters of legislation, by its usual forms and majorities, when not prohibited by the language of the Constitution. The constitutional prohibition which requires a two-thirds vote, applies to a removal from San Jose, which vote was given at the time of the removal from that place. *No necessary implication arises, in my opinion, that it should require a two-thirds vote in making any other removal,* unless the prohibition of the Constitution, requiring a two-thirds vote, clearly applied to all removals of the Seat of Government. I would be unwilling, from the reading of the Constitution, to disturb the different laws passed upon this subject, and impose a doubtful restraint upon the exercise of the powers of a co-ordinate branch of the Government.

I, therefore, concur in opinion with the Chief Justice of this Court, and hold the city of Sacramento to be by law the Capital of the State, and concur in the opinion that the judgment below be reversed with costs.

HEYDENFELDT, J., dissenting. This is an application for a mandamus to compel the Secretary of State, Treasurer, and Controller, to keep their offices at the town of San Jose, upon the allegation that it is the Seat of Government.

The Constitution, Art. XI, Sec. 1, fixes the Seat of Government at San Jose, but admits of its removal by law, provided such law is passed by two-thirds of all the members elected to each House of the Legislature.

In discussing the question here raised, it is first necessary to notice an Act of the last Legislature, by which the Respondents are required

to keep their offices at Sacramento, because it is contended that the Constitution does not require these officers to transact the business of State at the Seat of Government. If Sacramento is not the Seat of Government, is this law constitutional?

When the Constitution fixed a place by particular designation as the Seat of Government, and imposed a severe restriction upon its removal, ordinary common sense would lead us to conclude that it meant something; at the same time a universal rule of legal construction prohibits the inference that our fundamental law had engrafted upon it a mere vain expression. The admitted rule in construing laws, is to give them the interpretation most consonant to the ordinary acceptation of the language used; and if the language, in conveying the intended idea, is plain and unambiguous, it is not the subject of construction. What are we then to understand by the language which is in question? I think, that by the term "Seat of Government," must be meant the place where the legislative and chief executive departments of the Government shall transact the business of State, and where the officers of these departments ought to be found by the citizen who is in search of them. It is indisputable that the policy of every government requires such a provision; so, when we find it plainly made in the State's organic law, we would stultify ourselves to declare that it has no meaning, or cannot be enforced.

Moreover, to remove the Seat of Government requires a two-thirds vote of each branch of the Legislature. If, then, by a simple majority law, the officers of the various departments are required to keep their offices at a place other than the Seat of Government, the practical effect is, to all intents and purposes, a removal of the Seat of Government from the place appointed by the Constitution; and the last is violated, not with the boldness of direct attack, but in a form which, when examined, vainly attempts to conceal its unlawful purpose.

This reasoning forces me to decide, that if Sacramento is not the Seat of Government, the Act which I have just reviewed is not warranted by the Constitution.

But, in order to sustain the case of the relators, it is not merely sufficient that Sacramento is not the Seat of Government. It must be shown that San Jose is; and I now come to the consideration of that question.

5

The record in this case discloses the fact, that the law removing the Capital to Sacramento was not passed by a vote of two-thirds of each House of the Legislature; so we are precluded from the necessity of reviewing that Act, and are left to determine only upon the validity of the Act providing for the removal from San Jose to Vallejo. This latter Act has a proviso which renders it void, unless a certain proposition made by General Vallejo is complied with. I suppose it will not be denied that if an act of legislation is to become a law only upon a certain condition, or is to be null and void in a certain event, a Judge, who has to pass upon it, must know the nature of the condition or event, in order to determine if the law is in force. Assuming this to be admitted, I propose to examine this law, and the proviso upon which its vitality depends, in order that I may find whether the motive or purpose of its enactment was of such character as to give it constitutional validity. It has been said that we cannot inquire into the motives of the Legislature in making a law, but this is not correctly stated for a legal proposition. The true rule is, that we cannot go behind the Act to do so. In this investigation I do not intend going behind the Act, but will judge it from what it bears upon its face.

I have alluded to the condition or event upon which, by its own terms, it depends for existence, and the necessity of knowing that condition or event, in order to determine if it be in force. I find it to consist of a proposal on the part of a private individual to give the State large amounts of money, and lands and houses, on condition that the Seat of Government of the State of California should be established at Vallejo. To this proposition the Legislature acceded, and passed the Act of removal, making it dependent upon payment and performance. In plain language, the location of the Seat of Government of the State was sold for a strictly pecuniary and commercial consideration, and the Act passed in consummation of the bargain.

If the Constitution had been without any limitation upon this subject, I might have hesitated longer in disputing the legitimacy of this exercise of power, because in that case the discussion would have to be confined to the policy of requiring a recognition of the doctrines of natural ethics in our legislation. But, whatever force this may have, (and I believe it sufficient,) we are not left to lean on a basis of metaphysics alone. The Constitution is not silent, and to me, its meaning

is not doubtful. It fixed the Seat of Government in a place which the Convention deemed best for the transactions of the Government in its relations with the interests of the governed; and when it conferred the power of removal, its plain intent must have been that the same object, and no other, should be maintained.

The unbiased judgment of the legislators as to the proper place, was all that was required of them, and all which they had the right to give. Every express power must, according to every system of law and morals, be so employed as to secure the highest perfection of the end which it contemplates. Wherever the Constitution delegates and limits a power or trust to the Legislature, there must be some purpose in the trust, and it ought to be executed so as to effect that purpose, and that must be the main thing kept in view. It is only necessary to look at this Act to discover that the object of the Constitution was never once entertained by the body which enacted it. The new place selected was to be the Seat of Government by contract, if the price was paid. It was not, in the deliberate judgment of the Legislature, the place most suitable for transacting the business of Government, because it was not to be so if the purchase money failed. After all the care taken of, and importance ascribed to this question by the Convention; after a place was solemnly agreed upon which was styled "permanent," and hasty and rash legislation guarded against by requiring two-thirds of all the members elected to each House to concur before a change could be effected; it is, notwithstanding, made a marketable commodity, and dealt with as the subject of barter.

It has been said, that it is no harm for the Legislature to accept of private bounty for the benefit of the State. Certainly not, if that bounty is not received as a largess for the prostitution of its power. I will illustrate by a single example. The legislature has the power to create offices, and provide the manner for the appointment of officers. Suppose it provided for the appointment to office of those who would pay into the treasury the largest amount of money. This would be accepting private bounty for the State to the same effect as accepting Vallejo's bounty for giving him the Capital. Yet I think this would be held unconstitutional by the Courts. If not, we would have fallen upon evil times, for we would have reached the state of corruption

which marked the very worst eras of European governments, when the sale of offices was the crying infamy and oppression of the day.

And yet there is no provision in the Constitution which expressly prohibits it. Then, upon what ground would it be held invalid? Simply upon the ground I have taken in this case; that the Constitution has a purpose; that this was not its purpose; that the judges, in construing it, are bound to declare its purpose, and to determine the invalidity of every Act which, upon its face, shows a violation of that purpose.

I have thus reached my conclusion, that San Jose is the Seat of Government, and dissenting from the majority of the Court, I am in favor, upon the points here considered, of affirming the judgment of the District Court.