[Civ. No. 1799.   First Appellate District.—March 21, 1916.]

## J. J. BARRY et al., Respondents, v. F. F. JACKSON, as Commissioner, etc., Appellant.

CITY OF OAKLAND—ORDINANCE CHANGING POSITIONS OF SANITARY AND PLUMBING INSPECTOR—INTERFERENCE WITH CIVIL SERVICE SYSTEM. Under the provisions of the freeholders' charter of the city of Oakland, which took effect July 1, 1911, and which introduced into the government of that city for the first time a civil service system, the city council cannot circumvent the object and purpose of the civil service system, by enacting an ordinance giving to the positions of deputy plumbing inspector and assistant sanitary inspector the name of deputy sanitary and plumbing inspector, without making any change in the duties of such position, and remove the incumbents under civil service regulation and appoint other persons in their places, and *mandamus* will lie to compel the commissioner of public health and safety to reinstate such discharged employees.

APPEAL from a judgment of the Superior Court of Alameda County.   William H. Donahue, Judge.

The facts are stated in the opinion of the court.

Paul C. Morf, City Attorney, and George E. Jackson, Assistant City Attorney, for Appellant.

Charles A. Beardsley, for Respondents.

KERRIGAN, J.—This is an appeal from a judgment ordering a peremptory writ of mandate to issue, directing the appellant, as commissioner of public health and safety of the city of Oakland, to reinstate the respondents, petitioners in the trial court, to certain positions in the health department, under and in conformity with the findings and decision of the civil service board of that city.

The city of Oakland is governed by a freeholders' charter, which took effect July 1, 1911. That charter introduced into the government of the city for the first time a civil service system. Four years after the city had been operating under that system a new mayor and two new commissioners were elected, and they constituted a majority of the city council. The appellant was one of the new commissioners, and he was assigned to the department of public health and safety as commissioner thereof.

On the first day of its term the new administration introduced into the city council an ordinance, numbered 885 N. S., which repealed ordinance No. 350. The new ordinance abolished many of the old places of employment in the department of public health, and created, or attempted to create, new ones, the final result being a reduction in the number of employees of this department from thirty-four to thirty-three, and a saving in expense to the city of six hundred dollars per annum. The new ordinance was finally passed and took effect July 20, 1915.

Sections 5 and 6 of this ordinance provided as follows:

"Section 5. There are hereby created two positions of Deputy Sanitary and Plumbing Inspectors, and the salary of each thereof is hereby fixed at not less than one thousand five hundred ($1,500) dollars and not more than one thousand six hundred and twenty ($1,620) dollars per year payable in equal monthly installments.

"Section 6. There are hereby created two positions of Deputy Sanitary and Plumbing Inspectors, and the salary

of each thereof is hereby fixed at twelve hundred ($1200) dollars per year, payable in equal monthly installments.''

It will be noted that the four places of employment provided for in these two sections bear identically the same names, but the salaries are materially different.

The old ordinance had provided for two positions of deputy plumbing inspector, and for four positions of assistant sanitary inspector, and provided for a supervising officer known as chief plumbing and sanitary inspector, who was not subject to civil service regulation. Under the new ordinance provision was made for a chief plumbing inspector and also for a chief sanitary inspector, both of whom were exempt from civil service rules.

On and prior to the passage of the new ordinance respondents Barry and Cordan were deputy plumbing inspectors, and respondent Poole was an assistant sanitary inspector, which positions were among those contained in the classified civil service of the city, and were positions created by the old ordinance. Immediately upon the passage of the new ordinance the defendant notified petitioners that their respective positions had been abolished, and that their employment had terminated by the repeal of ordinance No. 350. The defendant also at once advised the civil service board of the passage of ordinance No. 885 N. S., and of the notice given to petitioners terminating their employment; and, acting upon the theory that there was no eligible list for the positions provided for in sections 5 and 6 of ordinance 885, requested the approval of the civil service board of temporary appointments made by him of three men without civil service standing, two being for positions provided for in section 5, and one for one of the places provided for in section 6 of the new ordinance.

Under the city charter if the places of employment created by sections 5 and 6 of ordinance 885 did not fall within the classified civil service, then, with the consent of the civil service board, the appointing power could make temporary appointments for a period not exceeding eight months. It was under this provision of the charter that the appellant sought approval of the temporary appointments just adverted to. In order to determine whether there was any eligible list applicable to the places of employment provided for in these sections of the new ordinance, and in order to determine whether the temporary appointees were fitted for the posi-

tions, the civil service board made an investigation, received and considered evidence, and found in accordance therewith that the duties attached to the places of employment provided for in section 5 of ordinance 885 N. S., and designated "deputy plumbing and sanitary inspectors," were identical with those of the positions designated as "deputy plumbing inspectors" by ordinance No. 350 N. S., which latter positions were held by petitioners Barry and Cordan. The board also found that the duties attached to the places of employment provided for in section 6 of ordinance No. 885 N. S., and designated by the same name of "deputy plumbing and sanitary inspectors," were the same as the duties attached to the places of employment designated in ordinance No. 350 N. S. as "assistant sanitary inspectors," one of which positions was held by the petitioner Poole.

Again, the petitioners, availing themselves of a provision of the charter, prosecuted an appeal before the civil service board, claiming to have been wrongfully discharged from their positions. This was a proceeding more formal than the investigation held by the board to ascertain the duties of the so-called new positions, and to classify the same, and upon the trial both sides were represented by counsel; testimony was introduced, and the board again unanimously found in a formal resolution that the duties under both ordinances were the same, and that the petitioners were entitled to reinstatement.

From the record before us it appears that the civil service board, both in its investigation undertaken for the purpose of classifying the so-called new positions, and upon the formal hearing of the appeal of the petitioners, received all available testimony, and decided in both proceedings that the positions under the old and new ordinances were substantially the same, and directed that the petitioners be restored to their employment. They called before them and received the testimony of the two men who were appointed under the new ordinance by the appellant as the heads of the plumbing and sanitary departments respectively; they also took the testimony of Joseph S. Biven, who was assistant sanitary inspector under the old ordinance, and who remained in the employ of the city under the new one, rendering the same services as he performed theretofore; they examined the daily report cards of the work done by the new employees who filled the positions

of the removed men; the city efficiency expert, together with others, also testified before the board, and, after full hearing, and after duly considering all the testimony introduced by the parties, the board found that while the positions provided for in the two ordinances bore different titles the duties thereunder were the same.

It is not claimed—or in any event no evidence was introduced at the trial in the superior court—to show that the conclusions reached by the civil service board were not sustained by sufficient evidence, and hence this court in common with the trial court is bound by the conclusions of the civil service board. While the language of the new ordinance may indicate that the positions under the two ordinances are essentially different, it certainly does not, as asserted by the appellant, overcome the presumption that the evidence received by the civil service board showed that the difference between the places of employment under the two ordinances was merely one of name, and that the duties under them were similar. According to the findings of the civil service board it would appear that in effect the city council was endeavoring to circumvent the object and purpose of the civil service system. On this phase of the case the trial court in an oral opinion pertinently said: "There are something like 1200 or more employees of the city of Oakland that come under civil service. Of that number in the neighborhood of twenty-five are what might be termed created by the charter; that leaves 1100 or more places of employment where the tenure of office is in some respects similar to the tenure of office of the petitioners here. Civil service in its true sense means the substitution of business principles and methods in the conduct of the business of government, and especially the merit system instead of the spoils system in the matter of appointment to office, in order to obtain competency and greater efficiency by continued employment of faithful employees. Whether a person may feel that civil service is good, or whether he feels that it is bad, the only way that anything can be obtained by civil service is to carry out the intention of the framers of the charter as set forth in art. 13, and have the provisions thereof enforced. If respondent's contention in this matter should prevail, it would mean in my view that all the council would have to do would be to repeal the ordinance creating the positions of the 1100 employees and enact new ordinances

giving the respective positions different names, and by that means civil service could be destroyed."

The appellant also claims that under the provisions of the charter the civil service board has authority to hear an appeal only when an employee has been discharged, and not in a case where his position has been abolished. The board, on the investigation made by it for the purpose of classifying the places provided for by the new ordinance, found that the positions of the petitioners had not been abolished. But even if it can be said that in repealing the old ordinance the old positions were, technically, at least, abolished, and hence that the board had no jurisdiction to hear the appeal, still it is not questioned that the civil service board, when it made its investigation for the purpose of classification, determined that the places of employment were the same under the new ordinance as under the old, from which it follows that the petitioners were entitled to be restored to the positions from which they were removed.

The judgment is affirmed.

Lennon, P. J., and Richards, J., concurred.