[Civ. No. 10447.   Third Dist.   Sept. 26, 1962.]

WILLIAM J. CHARAMUGA, Plaintiff and Respondent, v. DONALD COX, as County Sheriff, etc., et al., Defendants and Appellants.

John B. Heinrich, County Counsel, and J. Francis O'Shea, Assistant County Counsel, for Defendants and Appellants.

Albert E. Sheets and Carl Kuchman for Plaintiff and Respondent.

SCHOTTKY, J.—This is an appeal from a judgment of the superior court granting a writ of mandate which was sought to compel the restoration of William Charamuga to the job of farm supervisor in the Sheriff's Department of the County of Sacramento.

In May 1953 Charamuga qualified for the civil service position of farm supervisor in the sheriff's office. His function was to supervise the production of crops and the care of livestock at a farm run in conjunction with the operation of the branch county jail. Charamuga fulfilled the position until June 30, 1960, when he was "laid off." His employment was terminated because the position of farm supervisor at the branch county jail was abolished by the board of supervisors.

In May 1960 a reorganization of the sheriff's office was put into effect by which two road camps were consolidated. The county executive, with the concurrence of the sheriff, determined that certain positions could be abolished, including that of farm supervisor. Other positions were created. It was planned that the farm activities were to be curtailed and that the technical advice on farm operations was to be furnished through another county office—the office of farm advisor.

A hearing was held on the matter before the board of supervisors, and the recommendation of the county executive was adopted. The supervision of the farm activities was made a part of the duties of the road camp guards and a sheriff's lieutenant was added to supervise the activities of inmate work crews.

A road camp guard has the following duties: "Conducts roll call of inmates and patrols camp areas; supervises inmates in leisure-time activities and on work details such as cleaning and building drainage ditches, building fences, cutting wood, farming, and cleaning hospital grounds; checks area to discover inmates not working on assigned detail; enforces personal hygiene among inmates; sees that barracks, laundry, latrines, mess hall and kitchen and grounds are kept sanitary; drives a truck to transport men and supplies; maintains discipline among inmates; serves as guard in-charge of the camp outside of regular working hours; makes bed checks, inspects

camp premises, disturbances and hazards; responds to sick calls and administers first aid; keeps order and peace among the inmates; keeps records and makes reports."

The farm supervisor had the following duties: "Organizes and supervises the work of road camp inmates in raising field and row crops, poultry, and hogs; directs use of farm equipment including tractors and the gathering, grading, and crating of eggs; drives trucks in delivering farm products to County institutions; supervises repair and upkeep of farm buildings, fences, and equipment."

The court found: "That it is true respondent DONALD COX as Sheriff of the County of Sacramento caused the proposed budget for his department for the fiscal year 1960-1961 to omit a provision for the position of petitioner and in such form the same was transmitted by the County Executive to respondent BOARD OF SUPERVISORS and approved by them, and thereafter and pursuant thereto no provision was made in the annual salary ordinance of the County of Sacramento for said position under said name; that said omission by respondent DONALD COX was done for the purpose of assigning the duties of the position of petitioner to those not qualified under civil service to perform the same, to wit, Sheriff's Lieutenant respondent JAMES JOHNSON and Road Camp Guard respondent JEROME RAYMOND, and that the lay-off or discharge of petitioner was not done in good faith; that it is true respondent DONALD COX with the consent of respondent WILLIAM E. PIERSON as Personnel Director of Sacramento County offered to employ petitioner in the position of Road Camp Guard commencing July 1, 1960, but not to perform the duties of the position of County Farmer or Farm Supervisor; that said position of petitioner was not abolished."

There was also evidence that since the termination of Charamuga's employment the work of his position had increased. The number of inmates at the branch county jail assigned to farm labor on the county farm increased almost immediately, and at the time of trial averaged 57.3 men per day as against 33.4 men per day during the 12 months prior to petitioner's lay off. The quantity and value of farm machinery remained just as high. Crop production was about the same during the year after petitioner was laid off as it was before.

Appellants' principal contention is that "THE POSITION OF FARM SUPERVISOR WAS GENUINELY AND ACTUALLY ABOLISHED AND THERE IS NO EVIDENCE TO SUPPORT ANY FINDING TO THE CONTRARY." This contention is correctly answered by the fol-

lowing memorandum opinion of the learned trial judge, which we believe is supported by the evidence and the law:

"The Court is of the opinion that the evidence shows, without contradiction, that the removal of the petitioner from his position as Farm Supervisor, to which position he had permanent civil service status, did not conform to the procedural requirements of the County Civil Service Rules and Regulations. The question of good faith also arises.

"The evidence shows that the position of Farm Supervisor is still in existence and that the duties thereof have been, ever since petitioner's lay-off, and still are, being performed by persons not classified to perform such work under Civil Service Rules and Regulations. Respondents admit there are funds available to pay petitioner; however, regardless of this the fact that other persons are being paid for the same services is ample proof that funds are available for this purpose. Respondents contend that the fact that the position of Farm Supervisor was omitted from the annual salary ordinance, effective July 1, 1960, and that no funds were provided therein, is a complete answer to the petitioner's case. This argument completely overlooks the fact that the position of Farm Supervisor is still in existence under a different title and that the duties are still being performed by others not classified under Civil Service Rules and Regulations to perform them.

"Civil Service Rules do not guarantee to employees the tenure of positions which are no longer required. The Court recognizes that it is highly desirable from a standpoint of personnel efficiency, as well as in accord with considerations of public economy, that a governmental head should have the power to reduce his staff. However, one of the chief purposes of Civil Service Regulations is to safeguard honorable and efficient employees from arbitrary ouster, for the method of dismissal is as important as that of selection and appointment. (Citing: *Winslow* v. *Bull*, 97 Cal.App. 516 [275 P. 974] at p. 523.) Where, as here, it appears that the petitioner was discharged in disregard of the prescribed Civil Service Regulations and where it appears his lay-off may not have been in good faith, he is entitled to be reinstated to the position of Farm Supervisor under his permanent Civil Service rating. . . ."

The case of *Hanley* v. *Murphy*, 40 Cal.2d 572 [255 P.2d 1], bears a striking similarity to the instant case. In that case the Sheriff of the City and County of San Francisco omitted the position of jail superintendent from the annual

budget for his department and transmitted it to the mayor. He claimed he was effecting a reorganization of his department. The mayor sent it on to the board of supervisors. The board of supervisors adopted the annual salary ordinance omitting the position of jail superintendent. Whereupon, the sheriff laid off the petitioners and assigned the duties of the position of jail superintendent to others. In affirming issuance of a writ of mandate restoring the petitioners to their jail superintendent positions, the Supreme Court said at page 581: "[T]he civil service system was adopted to protect governmental employees and society from the spoils system in the matter of appointment to office. (*Barry* v. *Jackson, supra,* 30 Cal.App. 165, 169 [157 P. 828].) One of the chief purposes of civil service regulations is to safeguard honorable and efficient employees from arbitrary ouster, for the method of dismissal is as important as that of selection and appointment. (*Winslow* v. *Bull,* 97 Cal.App. 516, 523 [275 P. 974].) Manifestly, civil service rules do not guarantee to officers or employees the tenure of positions which are no longer required (10 Am.Jur., § 12, p. 933; annos. 4 A.L.R. 207, 37 A.L.R. 816, 172 A.L.R. 1369); and it is highly desirable from a standpoint of personnel efficiency, as well as in accord with considerations of public economy, that the department head may have the power to reduce his staff. But since the record here supports the trial court's finding that appellant Murphy, in the purported exercise of his power to effect a reduction of forces, acted in disregard of the prescribed civil service procedural requirements and in bad faith, petitioners are entitled to be restored to their respective positions under civil service rating. (*Powers* v. *Board of Public Works,* 216 Cal. 546 [15 P.2d 156].)"

As hereinbefore set forth, the court found "that the lay-off or discharge of petitioner was not done in good faith." We believe that there was ample evidence to support this finding. This evidence may be summarized as follows:

(a) The work of the position remained the same;

(b) There were ample funds to pay petitioner's salary;

(c) Two unqualified persons were assigned to do petitioner's work at more than twice his pay;

(d) The sheriff omitted petitioner's position from his departmental budget because he wanted "uniformed personnel" doing the farm supervision, none of whom were qualified under civil service;

(e) The civil service commission was never asked to re-

survey the duties of the position to see if they had changed so that policemen could qualify to perform them;

(f) Petitioner had satisfactorily performed the duties of his position for eight years;

(g) Petitioner was offered the position of guard (for which he never qualified under civil service) but not to work as farm supervisor.

A similar situation was involved in the case of *Rexstrew* v. *City of Huntington Park*, 20 Cal.2d 630 [128 P.2d 23]. We quote from page 632:

"The trial court also found that respondents were not dismissed for the purpose of effecting necessary economy, that there was no lack of work in either department to warrant their discharge, that there were ample funds in the city treasury with which their salaries could have been paid for the fiscal year 1938-1939, and that they were not discharged in good faith, but for the purpose of enabling appellants to replace them by persons more favored by the governing officers of the city.

"The members of the city council contend the resolution was passed in good faith and only for reasons of economy. They claim that shortly before the resolution was passed they received an audit showing a deficit in the city funds for the year closing June 30, 1938, and that in order to make up such deficit they reduced the personnel in the fire and police departments instead of raising the tax rate.

"Contrary to appellants' contention that the dismissal of respondents was necessary to effect economy, the evidence and inferences deducible therefrom adequately support the trial court's finding that such discharge was not in fact made necessary because of lack of funds, but was for the purpose of replacing respondents by other persons. The city treasurer testified that at the end of the fiscal year, June 30, 1938, there was in the general fund the sum of $83,064.70, and in the reserve 'water' fund the sum of $59,656.66. Appellants admit such sums were on deposit as reserve funds at that time. During the examination of the city treasurer, counsel for appellants stated, 'I will stipulate we had plenty of money to pay these salaries.' There was evidence that, following the dismissal of Rexstrew, Snoeberger, a younger man who had been employed in the fire department only two months previously, was retained, and that Peterson, the other probationary employee and likewise a younger man, was subsequently re-employed. The evidence also showed that after Cantonwine's

dismissal his duties as patrolman were performed by a school traffic officer whose classification was not within the provisions of the police civil service ordinance. Moreover, of the six members dismissed from the police department, four were given reemployment therein and some within two months after their discharge.''

The Supreme Court then stated: ''The power to abolish a position may not be used to effect the discharge of an employee protected by the salutary provisions of civil service regulations, unless such power is exercised in good faith. (*Livingstone* v. *MacGillivray,* 1 Cal.2d 546, 553 [36 P.2d 622]; *Childress* v. *Peterson,* 18 Cal.2d 636 [117 P.2d 336]; *Winslow* v. *Bull,* 97 Cal.App. 516, 523 [275 P. 974].) Here respondents held their respective positions under tenure acquired through the adoption of the civil service ordinances. Each had attained the status of a permanent employee and neither was charged with misconduct or any dereliction of duty referred to in the ordinances. The trial court's findings that the positions were not abolished in good faith, being supported by substantial evidence, will not be disturbed by this court.''

No other points raised require discussion.

We conclude that the judgment of the superior court granting a writ of mandate to compel the restoration of petitioner and respondent to the position of farm supervisor in the Sheriff's Department of the County of Sacramento is amply supported by the evidence and the law.

The judgment is affirmed.

Peek, P. J., and Pierce, J., concurred.

A petition for a rehearing was denied October 18, 1962, and appellants' petition for a hearing by the Supreme Court was denied November 21, 1962.