[L.A. No. 30369. In Bank. Mar. 12, 1975.]

COUNTY OF LOS ANGELES et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
CAROLE BURROUGHS, Real Party in Interest.

**COUNSEL**

John H. Larson, County Counsel, Daniel C. Cassidy, Chief Deputy Counsel, Joe Ben Hudgens and John Baskett, Deputy County Counsel, for Petitioners.

No appearance for Respondent.

Walter S. Weiss, William R. Jackson, Richard B. Wolf, Long & Levit and Littler, Mendelson & Fastiff for Real Party in Interest.

**OPINION**

**TOBRINER, J.**—In this case we must determine the propriety of a discovery order which requires local legislators to disclose portions of discussions in which they participated prior to the enactment of a municipal employee salary ordinance. The real party in interest, plaintiff in the underlying taxpayer suit, seeks such disclosure to aid in establishing her contention that the board of supervisors adopted the salary ordinance as a result of a threatened illegal strike by public employees. The taxpayer suit challenges the validity of the salary ordinance on the basis of its alleged connection with the threatened strike; the trial court, over the objections of the county and the individual legislators, ordered the officials "to answer questions as to discussions of strikes or threats of strikes at executive sessions of the Board of Supervisors." Petitioners now seek a writ of prohibition to restrain the trial court from enforcing its order.

As we explain, we have concluded that the discovery order violates a longstanding legal principle precluding judicial inquiry into the motivation or mental processes of legislators in enacting legislation. Although the taxpayer suggests that there is an exception to this principle when the motivation of the lawmakers is relevant to the validity of legislation, as it is claimed to be in the underlying complaint, we shall explain that even in such exceptional circumstances the authorities have prohibited any direct inquiries into the subjective reasoning of individual legislators. Accordingly, we have determined that the requested writ of prohibition should issue.

Real party in interest Carole Burroughs instituted the underlying

taxpayer suit seeking to enjoin the implementation of Ordinance No. 10,922 of the County of Los Angeles, an ordinance which establishes the 1974-1975 fiscal year salaries and wages for a majority of county employees. The complaint alleges that the Los Angeles County Board of Supervisors "under duress and coercion and as a direct result of . . . threatened illegal strike activities" by a variety of municipal employee organizations entered into an agreement with the employee organizations in which the supervisors agreed to enact a salary ordinance providing specified benefits in return for the employees' promise not to strike. The complaint further alleges that thereafter the supervisors enacted the challenged salary ordinance "as a direct result" and "under [the] duress and coercion" of the threatened illegal strike. Claiming that these circumstances render the ordinance void, the complaint seeks a declaration of invalidity and an injunction restraining the city from implementing the challenged legislation.

In preparing for the hearing on the preliminary injunction, the taxpayer deposed the five members of the board of supervisors who had voted on the ordinance, the director and deputy director of the county personnel department and the executive officer-clerk of the board of supervisors. The taxpayer attempted to question each deponent about discussions which had taken place between the supervisors and the county's labor negotiators at several executive sessions of the board preceding negotiations between the county and its employees' representatives. The taxpayer concedes that the purpose of such questioning was to probe the reasons behind the supervisors' subsequent adoption of the salary ordinance and to uncover evidence that would demonstrate that the strike threat was a substantial factor in producing the ultimate legislative wage increases.

The deponents, upon advice of counsel, refused to answer any questions relating to the executive session discussions on the ground that such information was privileged.[1] The taxpayer then moved for an order compelling the deponents to answer all questions concerning such executive session discussions. After a hearing, the trial court granted the motion in part, ordering the deponents to reveal the contents of such

---

[1]Although the record before us does not contain transcripts of the depositions, it appears that the five supervisors were also directly asked whether they would have voted for the salary ordinance in the absence of a strike threat; all the supervisors apparently answered this question, three indicating that they would have voted for the ordinance in any event and two stating that their vote was influenced by the strike threat. As we explain hereafter, we believe that this entire line of questioning was improper and should not have been pursued at the deposition.

discussions insofar as they involved strikes or threats of strikes.[2] Petitioners seek a writ restraining the enforcement of this order.

Both parties in this proceeding appear to assume that the propriety of the trial judge's discovery order rests solely upon the application of section 1040 of the Evidence Code,[3] which establishes a conditional privilege for "official information." (See *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 538-539 [113 Cal.Rptr. 897, 522 P.2d 305].) Petitioners, emphasizing that section 54957.6 of the Government Code[4] articulates a strong public policy in favor of the confidentiality of strategy sessions between a public entity and its labor negotiators, argue that this public interest in confidentiality clearly outweighs the taxpayer's desire for disclosure. The taxpayer, on the other hand, asserts that the limited disclosure ordered by the trial court—confined only to those portions of the discussions relating to strikes or strike threats—is indispensable if she is to prove her case and further, that such disclosure does not violate any valid interest in confidentiality since the labor negotiations have already terminated. (Cf. *Oceanside Union School Dist.* v. *Superior Court* (1962) 58 Cal.2d 180 [23 Cal.Rptr. 375, 373 P.2d 439].) Under these circum-

---

[2] The challenged order reads in relevant part: "Motion granted in part as follows: [Deponents] are ordered to resume their depositions at times and places agreed to by counsel . . . and then and there to answer questions as to discussions of strikes or threats of strikes at executive sessions of the Board of Supervisors. To such extent, Court finds interest of justice outweighs necessity of preserving confidentiality. Balance of motion denied."

[3] Section 1040 provides: "(a) As used in this section, 'official information' means information acquired in confidence by a public employee in the course of his duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made.

"(b) A public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing such information, if the privilege is claimed by a person authorized by the public entity to do so and:

"(1) Disclosure is forbidden by an act of Congress of the United States or a statute of this state; or

"(2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice; but no privilege may be claimed under this paragraph if any person authorized to do so has consented that the information be disclosed in the proceeding. In determining whether disclosure of the information is against the public interest, the interest of the public entity as a party in the outcome of the proceeding may not be considered."

[4] Section 54957.6 provides: "Notwithstanding any other provision of law, a legislative body of a local agency may hold executive sessions with its designated representatives prior to and during consultations and discussions with representatives of employee organizations regarding the salaries, salary schedules, or compensation paid in the form of fringe benefits of employees in order to review its position and instruct its designated representatives."

stances, the taxpayer contends, the trial court did not abuse the discretion explicitly granted to it by section 1040.

In our view, however, we need not resolve these conflicting claims as to the proper application of section 1040, for we believe that the discovery order in the instant case implicates a more fundamental, historically enshrined legal principle that precludes any judicially authorized inquiry into the subjective motives or mental processes of legislators. As early as 1855, Chief Justice Murray declared in an opinion for this court: "I know of no authority this Court possesses to inquire into the motives of the Legislature in the passage of any law; on the contrary, it has been uniformly held, that they could not be inquired into." (*People* v. *Bigler* (1855) 5 Cal. 23, 26.) This doctrine has been reiterated in literally scores of California decisions. (See, e.g., *People* v. *County of Glenn* (1893) 100 Cal. 419, 423 [35 P. 302] ("[T]he motives which induced legislative action are not a subject of judicial inquiry"); *Hadacheck* v. *Alexander* (1915) 169 Cal. 616, 617 [147 P. 259] ("It is . . . the general, if not the universal, rule that the motive of the legislator may not be inquired into.").)

██ As Justice Field wrote for the United States Supreme Court in *Soon Hing* v. *Crowley* (1885) 113 U.S. 703, 710-711 [28 L.Ed. 1145, 1147, 5 S.Ct. 730]: "[T]he rule is general with reference to the enactments of all legislative bodies that the courts cannot inquire into the motives of the legislators in passing them, except as they may be disclosed on the face of the acts, or inferrible from their operation, considered with reference to the condition of the country and existing legislation. The motives of the legislators, considered as the purposes they had in view, will always be presumed to be to accomplish that which follows as the natural and reasonable effect of their enactments. Their motives, considered as the moral inducement for their votes, will vary with the different members of the legislative body. The diverse character of such motives, and the impossibility of penetrating into the hearts of men and ascertaining the truth, precludes all such inquiries as impracticable and futile."

██ Moreover, the authorities, both in California and more generally, make clear that the rule barring judicial probing of lawmakers' motivations applies to local legislators as well as to members of the state Legislature or of Congress. (See, e.g., *Nickerson* v. *San Bernardino* (1918) 179 Cal. 518, 522-524 [177 P. 465]; *McCarthy* v. *City of Manhattan Beach* (1953) 41 Cal.2d 879, 894-895 [264 P.2d 932]; *People* v. *City of Palm*

*Springs* (1958) 51 Cal.2d 38, 46-47 [331 P.2d 4]; 5 McQuillin, Municipal Corporations (3d ed. 1969) § 16.90, pp. 287-290.)[5]

On one level, the doctrine which precludes judicial delving into the subjective mental processes of individual legislators is a corollary of the related legal principle which establishes that the validity of a legislative act does not depend on the subjective motivation of its draftsmen but rests instead on the objective effect of the legislative terms. Thus, on many occasions this court has declared: " '. . . [A] judiciary must judge by results, not by the varied factors which may have determined legislators' votes . . . .' " (*Wilke & Holzheiser, Inc.* v. *Dept. of Alcoholic Bev. Control* (1966) 65 Cal.2d 349, 364 [55 Cal.Rptr. 23, 420 P.2d 735]; *Werner* v. *Southern Cal. etc. Newspapers* (1950) 35 Cal.2d 121, 129 [216 P.2d 825, 13 A.L.R.2d 252].) As the United States Supreme Court has emphasized: "It is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive. . . . 'The decisions of this court from the beginning lend no support whatever to the assumption that the judiciary may restrain the exercise of lawful power on the assumption that a wrongful purpose or motive has caused the power to be exerted.' [Citation.]" (*United States* v. *O'Brien* (1968) 391 U.S. 367, 383 [20 L.Ed.2d 672, 683, 88 S.Ct. 1673].)[6] Given this general rule that

---

[5]Because the principle precluding judicial inquiry into legislative motivation is, in part, a reflection of the separation of powers doctrine, the real party in interest seizes upon certain language in our recent case of *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 36 [112 Cal.Rptr. 805, 520 P.2d 29] to the effect that "the separation of powers clause is inapplicable to government below the state level," as indicating that the general principle barring judicial probing of motivation does not apply to local legislation. As the context of *Strumsky* reveals, however, the quoted statement related only to the question of whether local governmental bodies could exercise both judicial and legislative functions; neither *Strumsky* nor the authority it cites intimates any intention of altering the well-established California rule forbidding judicial inquiry into local legislative motivation.

The case of *Walker* v. *County of Los Angeles* (1961) 55 Cal.2d 626 [12 Cal.Rptr. 671, 361 P.2d 247] is similarly inapposite. In *Walker,* the court held that a charter provision requiring a local legislature to fix salaries on the basis of prevailing wages was judicially enforceable, and that a court would inquire into whether the local legislators had complied with the charter's mandate. In the course of its opinion, the court observed that the presumption of procedural regularity attaching to the local legislature's action was not conclusive—as in the case of acts of the state Legislature—but was rebuttable. (55 Cal.2d at pp. 635-636.) Neither the *Walker* case nor its predecessors (see *San Christina etc. Co.* v. *San Francisco* (1914) 167 Cal. 762, 770 [141 P. 384]; cf. *Berkeley High School Dist.* v. *Coit* (1936) 7 Cal.2d 132, 138 [59 P.2d 992]), however, involved any inquiry into legislative motivation and such decisions did not question the vitality of the California precedents applying to local legislative bodies the general rule precluding inquiry into motivation.

[6]Chief Justice Marshall's opinion in *Fletcher* v. *Peck* (1810) 10 U.S. (6 Cranch) 87 [3 L.Ed. 162] represents the classic statement of the policies behind the rule. Justice

the validity of legislation does not turn on legislative motive, the mental processes of individual legislators become irrelevant to the judicial task; hence, we do not peer into these subjective realms.

Although the taxpayer concedes that normally courts will not invalidate legislation on the basis of illicit motives or coercive influences which may have actuated the legislators, she asserts that there is an exception to this general rule when legislation is passed under the coercive threat of an illegal strike. In support of this theory, the taxpayer relies on the recent Court of Appeal opinion in *Grasko* v. *Los Angeles City Board of Education* (1973) 31 Cal.App.3d 290, 297-298 [107 Cal.Rptr. 334], in which the court invalidated an employment agreement entered into by the city board of education on the ground that the agreement had resulted from an illegal teachers' strike. The taxpayer contends that under the *Grasko* holding, the legislators' reasons for enacting a salary ordinance directly relate to the ordinance's validity; she contends that under these circumstances she enjoys the right to question the legislators about their motivation. We cannot agree.

In the first place, we entertain grave doubts both as to whether the *Grasko* case supports the taxpayer's theory, and, more fundamentally, whether the *Grasko* holding is correct even on its own limited terms. Unlike the instant case, the *Grasko* decision did not involve an attack on the validity of a legislative act, and thus the *Grasko* court had no occasion to consider the effect of the general principle precluding the invalidation of legislation on the basis of improper motivation. Moreover, in concluding that the illegality of a strike necessarily taints any contractual agreement entered into by the public employer to settle the strike, the *Grasko* court appears to have vastly oversimplified the complex questions involved in determining what sanctions for illegal strikes may appropriately be implemented by the judiciary in the

Marshall explained: "It may well be doubted, how far the validity of a law depends upon the motives of the framers, and how far the particular inducements, operating on members of the supreme sovereign power of a state . . . are examinable in a court of justice. If the principle be conceded, that an act of the supreme sovereign power might be declared null by a court, in consequence of the means which procured it, still would there be much difficulty in saying to what extent those means must be applied to produce this effect. Must it be direct corruption? or would interest or undue influence of any kind be sufficient? Must the vitiating cause operate on a majority? or on what number of the members? Would the act be null, whatever might be the wish of the nation? or would its obligation as nullity depend upon the public sentiment? If the majority of the legislature be corrupted, it may well be doubted, whether it be within the province of the judiciary to control their conduct, and, if less than a majority act from impure motives, the principle by which judicial interference would be regulated, is not clearly discerned." (10 U.S. at p. 130 [3 L.Ed. at p. 176].)

absence of definitive legislation.[7] On this point, at least one other Court of Appeal has reached a conclusion contrary to that of the *Grasko* court, and has affirmed the validity of an agreement entered into by a public employer in the course of a strike settlement. (See *East Bay Mun. Employees Union* v. *County of Alameda* (1970) 3 Cal.App.3d 578, 584 [83 Cal.Rptr. 503]; cf. *Social Workers Union Local 535* v. *County of Los Angeles* (1969) 270 Cal.App.2d 65, 77, fn. 12 [75 Cal.Rptr. 566].)

We need not resolve the merits of the taxpayer's cause of action at this pretrial discovery stage, however, for even if we assume that the ordinance at issue could be invalidated if it resulted from the threat of an illegal strike, the authorities make clear that the taxpayer still is not entitled to directly question the legislators as to their mental processes or their reasons for enacting the ordinance. In other words, even assuming that the ulterior purpose behind the enactment *is* relevant to the ordinance's validity, the taxpayer still may not prove such ulterior purpose by requiring legislators to testify about their reasoning process or by questioning others about the factors which may have led to the legislators' votes. Even under such circumstances, the principle barring judicially authorized inquiry of legislators' motivation remains intact.

*Stahm* v. *Klein* (1960) 179 Cal.App.2d 512 [4 Cal.Rptr. 137] is a case in point. In *Stahm* a civil service employee who could be dismissed only for cause challenged the validity of a municipal ordinance abolishing his position on the grounds that the ordinance had been adopted in bad faith. Earlier cases had established that this situation was one of the rare circumstances in which the ulterior purpose of the legislative act was relevant to the legislation's validity; "[t]he power to abolish a position may not be used to effect the discharge of an employee protected by the salutary provisions of civil service regulations, unless such power is exercised in good faith." (*Rexstrew* v. *City of Huntington Park* (1942) 20 Cal.2d 630, 633 [128 P.2d 23]; see *Livingstone* v. *MacGillivray* (1934) 1 Cal.2d 546, 553 [36 P.2d 622]; *Barry* v. *Jackson* (1916) 30 Cal.App. 165, 169-170 [157 P. 828].) These earlier decisions recognized that because the civil service provisions established definite limits on the public entity's power, the entity could not be permitted to avoid such restrictions—and strip employees of the important protections to which they were

---

[7]See generally Wellington & Winter, *Structuring Collective Bargaining in Public Employment* (1970) 79 Yale L.J. 805, 839-842; Ligtenberg, *Some Effects of Strikes and Sanctions* (1973) 2 J. Law & Ed. 235, 247-248; Bernstein, *Alternatives to the Strike in Public Labor Relations* (1971) 85 Harv.L.Rev. 459, 462-463; Smith, *State and Local Advisory Reports on Public Employment Labor Legislation: A Comparative Analysis* (1969) 67 Mich.L.Rev. 891, 910-914.

entitled—by virtue of a legislative subterfuge. Thus, in *Stahm*, the "ulterior purpose" or "good or bad faith" of the Legislature in abolishing Stahm's position was very much an issue in the case.

The question before the *Stahm* court was whether, given the relevance of the "bad faith" of the legislators, the employee was entitled to prove such bad faith by questioning the individual legislators about their subjective motivation or by introducing "evidence of oral conversations relating to ill feeling among the members of the official family . . . to prove the presence in the minds of the council members of good or bad thoughts . . . ." (179 Cal.App.2d at p. 518.) Concluding that "this question must be answered in the negative," the *Stahm* court explained: "In reality, no action taken by mortal man can ever be said to have been done from a single unadulterated motive. The mind of man contains such a complex combination of thoughts and emotions that clearly segregating them is a virtual impossibility. Courts are compelled to recognize and understand this factor in human thinking and action in all phases of their work of weighing evidence and considering decisions. About all that a court can hope for, even in those cases in which it is permitted to consider motive, is to attempt to ferret out the principle or dominating purpose of the party. Even this is fraught with innumerable difficulties. The people of this country, from the first breath of its existence to the present time, have continuously sought to keep separate and apart the judicial and legislative functions. Any attempt, therefore, by the judiciary to define the personal thoughts of the legislator in voting for the passage of a law involves such delicate and frustrating problems that it has always been frowned upon." (179 Cal.App.2d at p. 518.) Thus, the *Stahm* court held that the trial court had improperly received evidence of the legislators' thought processes.[8]

■ As numerous cases demonstrate, the refusal to permit direct inquiry into the subjective motivations of legislators does not insulate

---

[8]The *Stahm* decision followed the approach of *Livingstone* v. *MacGillivray, supra,* 1 Cal.2d 546, an earlier decision of this court. *Livingstone,* like *Stahm,* involved a challenge to the legislative abolition of a civil service position. On appeal, the employee challenged the trial court's refusal to admit into evidence the testimony of a witness "who was asked to relate a conversation which he had with respondent MacGillivray [one of the local legislators] . . . . It was declared that the purpose of introducing this evidence was to show motive." (1 Cal.2d at p. 558.) Our court affirmed the rejection of this evidence, pointing out first that the "bad faith" of the legislators had not been properly pleaded and then declaring "[f]urthermore, even if bad faith had been pleaded, proof of extraneous facts for the purpose of showing motive was not allowable in the absence of some showing on the face of the resolution of abolition that it was adopted from improper motives. [Citation.]" *(Id.)*

legislative abolition of civil service positions from effective review. In many instances, litigants have been able to demonstrate by virtue of objective criteria that a particular abolition was undertaken in bad faith in an attempt to circumvent applicable civil service regulations. Thus, in *Rexstrew* v. *City of Huntington Park, supra,* 20 Cal.2d 630, the court was able to determine from evidence as to the state of the city's finances and its contemporaneous hiring practices that the city's explanation for the removal of nine tenured employees—ostensibly for "lack of funds"—was a sham and that the legislative action had not been taken in good faith. Similarly, in *Charamuga* v. *Cox* (1962) 207 Cal.App.2d 853 [24 Cal.Rptr. 811] and *Barry* v. *Jackson, supra,* 30 Cal.App. 165, the courts had little difficulty in determining that the abolition of certain positions was merely a subterfuge for dismissing specific individuals from the fact that "new" positions with new titles established after the abolition were in fact identical in responsibilities and duties to the abolished jobs. (See also *Winslow* v. *Bull* (1929) 97 Cal.App. 516 [275 P. 974]).[9] We are aware of no case, however, in which a court has permitted direct interrogation of legislators as to their reasons or motivation in voting on specific legislation. (See, e.g., *Nickerson* v. *San Bernardino, supra,* 179 Cal. 518, 522; *Livingstone* v. *MacGillivray, supra,* 1 Cal.2d 546, 558-559; cf. *Childress* v. *Peterson* (1941) 18 Cal.2d 636, 641-642 [117 P.2d 336].)

Professor Bickel has captured the essence of the policies underlying the judicial principle which we apply in this case. "It is simply unthinkable," Professor Bickel has written, "that members of legislative majorities should from time to time be subject to cross-examination in various courts over the country regarding their state of mind when they voted. That is no more representative government than it would be judicial process for judges to be subject to cross-examination by legislative committees about their state of mind in deciding cases. It

---

[9]The case of *Trujillo* v. *City of Los Angeles* (1969) 276 Cal.App.2d 333 [81 Cal.Rptr. 146] also illustrates that "ulterior purpose" can often be divined by examination of objective conduct rather than by the probing of subjective thoughts. In *Trujillo* after the board of harbor commissioners had abolished Trujillo's position of manager of harbor real estate, Trujillo exercised his civil service right to displace his subordinate in the subordinate's position of assistant manager. The board thereafter created another assistant manager's position, appointed the old assistant to the job, transferred most of the assistant manager's duties and responsibilities to the old assistant, raised the old assistant's salary and lowered Trujillo's salary, and finally instructed the general manager of the harbor department to assign Trujillo only miscellaneous work unconnected with real estate. Viewing these objective actions as a whole, the trial court and Court of Appeal easily concluded that the board's abolition of Trujillo's position was not undertaken in good faith " '[but] was a mere subterfuge to mask the true intent of the Harbor Commission, which was to totally eliminate [Trujillo's] connection with and employment by the City of Los Angeles.' " (276 Cal.App.2d at pp. 337-338.)

seems almost anticlimactic to add that legislatures whose members were subject to call for testimony in this fashion would be hard put to find the time to legislate." (Bickel, The Least Dangerous Branch (1962) p. 215.)

The potential passages and pathways of legislative motivation are as complex as those of the labyrinth of King Minos of Crete. ■ We conclude that the trial court erred in ordering the deponents to answer questions as to conversations relating to the legislators' reasons for voting for the challenged ordinance.

Let a peremptory writ of prohibition issue, restraining respondent from enforcing the challenged order.

Wright, C. J., McComb, J., Mosk, J., Sullivan, J., Clark, J., and Richardson, J., concurred.