67 Cal.Rptr.3d 858 (2007)
156 Cal.App.4th 1148
Gerard STE. MARIE, Respondent,
v.
RIVERSIDE COUNTY REGIONAL PARK AND OPEN SPACE DISTRICT, Appellant;
Mt. San Jacinto Community College District, Real Party in Interest.
No. E041312.
Court of Appeal of California, Fourth District, Division Two.
November 13, 2007.
*860 Joe S. Rank, County Counsel, Patti F. Smith, Deputy County Counsel; and Anita C. Willis, Los Angeles, for Appellant.
Gerard Ste. Marie, in propria persona, for Respondent.
No appearance for Real Party in Interest.

*859 OPINION
MILLER, J.

INTRODUCTION
This appeal involves the interplay between two sections of Article 3, Chapter 3, Division 5 of the Public Resources Code[1] (§§ 5500 et seq.), entitled "Regional Park, Park and Open-Space, and Open-Space Districts" (Article 3). Both statutes are derived from legislation enacted in 1933 to implement the creation of regional park districts "for the purpose of acquiring, improving, and maintaining parks, playgrounds, beaches, park-ways, scenic drives, boulevards and other facilities for public recreation...." (Stats.1933, c. 1043, p. 2664.)[2] Section 5540 provides that a regional park and open-space district "may not validly convey any interest in any real property actually dedicated and used for park or open-space, or both, purposes without the consent of a majority of the voters of the district." Section 5565 provides that "legal title to all property acquired by the district ... shall immediately and by operation of law vest in the district, and shall be held by the district in trust for, and is dedicated and set apart for, the uses and purposes set forth in this article."
In 2003, eight years after acquiring 161 acres of real property for recreational purposes (the Wildomar Property), District entered into an option agreement to sell approximately one-half of the property to the Mt. San Jacinto Community College District (MSJCC), for construction of a college campus. The following year, contending that District failed to obtain the requisite consent to convey the Wildomar Property in accordance with section 5540, Gerard Ste. Marie, a registered voter in the County of Riverside, petitioned the *861 superior court for a writ of mandate to prohibit District from conveying the property to MSJCC. In 2006, Ste. Marie filed a motion for summary judgment, which was granted. District appealed.
The thrust of District's position is that the transfer limitations set forth in section 5540 have no bearing upon its proposed transfer of the Wildomar Property because that property was not "actually dedicated" for park and open-space purposes, as purportedly required by the statute. As we shall explain, we disagree with District's interpretation of section 5540 and also reject its additional claims that it was prejudiced by various actions taken by the court during the course of the summary judgment hearing. Accordingly, we shall affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND
District is an independent agency established pursuant to Article 3 and is governed by the Board of Supervisors of Riverside County, which sits as its board of directors. In 1995, District acquired the Wildomar Property from the Potter Family Trust, to be developed as a regional park which would include recreational activity. Appraised at $1,370,000, the Wildomar Property was purchased for $950,000, with District accepting the remaining $420,000 as a gift from the seller. A grant deed recorded on July 20, 1995, contained District's certificate of acceptance.
Subsequent to its acquisition of the Wildomar Property, District used it for open-space purposes as a wildlife habitat conservation area, among other uses.
In 2003, District entered into the aforesaid option agreement, which was thereafter approved by the board. The agreement was purportedly made pursuant to Government Code section 25365, which provides: "The board of supervisors may ... convey ... to the state or any ... other special district within the county ... any real or personal property, or interest therein belonging to the county ... if the property or interest therein to be conveyed ... is not required for county use."
In August 2004, Ste. Marie filed the underlying mandamus petition. He alleged that in entering into the option agreement, District had failed to comply with section 5540 and that "there exists a real and immediate danger that [District] will commit irreparable harm by conveying and disposing of the Wildomar [P]roperty in direct contravention to the prohibitions of state law."
In July 2005, District's board of directors approved a resolution seeking a Senate Concurrent Resolution in Sacramento authorizing conveyance of the Wildomar Property to MSJCC pursuant to section 5540. However, no action was taken on the resolution in the State Legislature.
In February 2006, Ste. Marie filed a motion for summary judgment. Among other things, he alleged that District, in proceeding under Government Code section 25365, had "mistakenly treated the Wildomar property as county Owned land and erroneously followed the procedure for conveyance of unnecessary land owned by a county instead of that for conveyance of unnecessary land owned by a regional park and open space district." According to Ste. Marie, District had "failed to comply with the provisions of [section 5540], which failure, in accord with the plain language as set forth therein, functions to legally prohibit land conveyances of the type specified under the Option Agreement."
In opposing summary judgment, District argued there was a triable issue of fact as to whether the Wildomar Property was *862 "actually dedicated" and thus subject to the transfer restrictions of section 5540. District further asserted that "[r]elevant facts regarding the purchase, documents of transfer and the manner in which the County inventoried the Wildomar Property are in dispute."
The matter proceeded on May 25, 2006. During the course of the hearing, the court commented on the distinction between District and the County of Riverside, noting that counsel for District was "blurring the lines" when she asserted that District operates as a county entity, ruled by the County Board of Supervisors.[3] Ste. Marie agreed with the court, acknowledging that District is essentially an agency of the State. When counsel for District again raised the issue a few moments later, the court retorted: "[District] is not an agency of the County. It is a separate entity. It is a separate entity. The fact that the Board of Supervisors sit as the board for the District does not mean it's an agency of the county. They are completely separate. And that is, I think, the reason for the distinction and the reason why [section] 5540 applies and the reason why by operation of law once the deed was accepted it was considered a dedication."[4]
After hearing argument from counsel and having indicated its intention to grant the motion, the court continued the matter to June 8, 2006, so that it could consider Ste. Marie's evidentiary objections, which apparently had been overlooked. Counsel for District then asked for leave to present at the continued hearing declarations explaining that District had sought approval from the state "to expeditiously resolve [Ste. Marie's] concerns." The court denied the request, stating: "No further briefings. No further documents."
When the matter resumed on June 8th, the court indicated it had sustained all of Ste. Marie's evidentiary objections and that its prior tentative ruling would stand. Counsel for District then asked the court to allow her to pick up where she left off at the prior hearing, whereupon the court said she could be heard briefly. Counsel stated: "We did not discuss this one specific very important issue. It all hinges on the word `actually.' [Section] 5540 ... states: `An easement or other interest in real property may be dedicated'may, not shall. It's not automatically dedicated by operation of law. `It may be dedicated for parks purposes by the adoption of a resolution by the board of directors.' It did not happen in this case. [¶] And then says *863 `Any interest so dedicated'again, it refers to the word `so dedicated'`may be conveyed as per [section] 5540.' Here is where the word `actually' becomes very critical. `A district may not convey any real property actually dedicated.' It refers right to its own section of requiring a resolution. That is so critical, your Honor. The word `actually' by its plain meaning imports that needs to be a factactually, factually. That's a material issue that is in dispute in the summary judgment." Then, insisting that the County of Riverside "knows how to dedicate property" and "how to receive property dedication," counsel argued that in this case there simply was no dedication. The court at that point stopped counsel from arguing any further and asked Ste. Marie if he had any other comments.
Having deferred to the court's tentative ruling, Ste. Marie was directed to prepare a proposed order, which he did.[5] On June 27, 2006, the court signed a proposed judgment prepared by Ste. Marie. District's appeal followed.

DISCUSSION
The positions of the parties are well defined. As indicated above, District maintains that the Wildomar Property was not "actually dedicated" within the meaning of section 5540 and thus was not subject to the statute's transfer restrictions. In taking this position, District concedes that it purchased the Wildomar Property for public purposes; however, it maintains it took no affirmative action to dedicate the property, and that nothing in the purchase agreement indicated the property was being "offered" for dedication. Ste. Marie, on the other hand, argues that District's acquisition and ownership of the Wildomar Property was in itself a sufficient basis for subjecting District to the provisions of section 5565. Thus, according to Ste. Marie, the property was, contemporaneously with its acquisition, "dedicated and set apart for" such park and open-space uses and purposes as are set forth in section 5541.2.[6] As we now explain, Ste. Marie is correct.

A. The Wildomar Property was "dedicated" for park and/or open-space purposes at the time it was acquired; thus, District's proposed transfer was subject to section 55-0's transfer restrictions and summary judgment was proper.

1. Standard of review.
"Summary judgment is granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc, § 437c, subd. (c).) In reviewing a ruling on a motion for summary judgment, an appellate court 1) identifies the issues framed by the pleadings, 2) determines whether the moving party has established facts which negate the opposing party's and justifies a judgment in the moving party's favor, and 3) where a summary judgment motion prima facie justifies a judgment, determines whether the opposition demonstrates the existence of a triable, material factual issue. [Citation.] *864 Where, as here, the construction of a statute is at issue, we independently review the statute to determine the validity of the judgment. [Citation.]" (County of Alameda v. Pacific Gas & Electric Co. (1997) 51 Cal.App.4th 1691, 1697-1698, 60 Cal.Rptr.2d 187.)
Moreover, "[w]e independently review the trial court's determinations of law. `We are not bound by the trial court's stated reasons, if any, supporting its ruling; we review the ruling, not its rationale.' [Citation.]" (Camp v. Jeffer, Mangels, Butler & Marmaro (1995) 35 Cal. App.4th 620, 629, 41 Cal.Rptr.2d 329 (Camp).)

2. Statutory interpretation.
"`The rules governing statutory construction are well settled. We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] To determine legislative intent, we turn first, to the words of the statute, giving them their usual and ordinary meaning. [Citations.] When the language of a statute is clear, we need go no further. However, when the language is susceptible of more than one reasonable interpretation, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citations.]' [Citation.] Thus, although we look first to the statutory language, we do not give the words a literal meaning if to do so would result in an absurd result that was not intended. [Citation.] We should avoid an interpretation `"which renders a part of the statute or ordinance `surplusage.'"' [Citation.] We must give due consideration to the public entity's view of the meaning of its ordinance. [Citation.] However, we are not bound by the public entity's views, as interpretation of laws is ultimately a judicial function. [Citations.]" (Chaffee v. San Francisco Public Library Com. (2005) 134 Cal.App.4th 109, 114, 36 Cal.Rptr.3d 1 (Chaffee).)
Further, "[i]f the words are clear, a court may not alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. [Citation.] At the same time, however, a statute is not to be read in isolation; it must be construed with related statutes and considered in the context of the statutory framework as a whole. [Citation.]" (Kalway v. City of Berkeley (2007) 151 Cal.App.4th 827, 833, 60 Cal.Rptr.3d 477.) Moreover, "when courts are faced between two interpretations of the same statute, courts should consider the consequences that flow from a particular interpretation. [Citation.] The idea is that, as between two interpretations, and all else being equal, courts should prefer the more reasonable one. [Citation.] It is a policy that 'derives largely from the presumption that the Legislature intends reasonable results consistent with its apparent purpose.' [Citation.] And, of course, when one interpretation leads to absurd results, that is certainly a reason to reject it. [Citation.]" (Gunther v. Lin (2007) 144 Cal.App.4th 223, 249-250, 50 Cal.Rptr.3d 317.)

3. The interplay between sections 5540 and 5565.
Applying the foregoing principles governing summary judgment and the rules governing statutory interpretation, we conclude that the trial court was correct in granting Ste. Marie's motion. However, before explaining the basis for our decision and why we disagree with District's interpretation of section 5540, we briefly address what this case is not about. This *865 case is not about a dedication of the type which was the focal point in Baldwin v. City of Los Angeles (1999) 70 Cal.App.4th 819, 837, 83 Cal.Rptr.2d 178 (Baldwin), a case cited by Ste. Marie in support of his summary judgment motion, and by District both at the motion hearing and in its opening brief.
As defined in Black's Law Dictionary, "dedication" is "[t]he donation of land or creation of an easement for public use." A "common-law dedication" is "[a] dedication made without a statute, consisting in the owner's appropriation of land, or an easement in it, for the benefit or use of the public, and the acceptance, by or on behalf of the land or easement." "A dedication presumed by reasonable inference from the owner's conduct" is an "implied dedication," while "[a] dedication for which the necessary steps are statutorily prescribed, all of which must be substantially followed for an effective dedication," is the definition of a "statutory dedication."[7] (Black's Law Diet. (7th ed.1999) p. 421, cols. 1 & 2.)
The issue presented in Baldwin was whether land donated to the City of Los Angeles by Southern Pacific Real Estate Enterprises was accepted by the city with a park use restriction. (Baldwin, supra, 70 Cal.App.4th at p. 836, 83 Cal.Rptr.2d 178.) Concluding that an ordinance adopted by the city council did not constitute an acceptance of the dedication with a park use restriction, the Court of Appeal reversed the trial court's judgment to the contrary. The instant case, however, concerns a regional park and open-space district which acquired property for a specific purpose and then, upon determining that it no longer had a need for that property, attempted to sell it without complying with certain restrictions. Simply stated, the Legislature's use of the term "dedicated" in various sections of Article 3 does not bring into play the concept of "dedication of land." Thus, District puts misplaced reliance on Baldwin for the proposition that "[m]ere ownership by [a] public entity does not `dedicate' the property for a particular use or purpose without some express intention by the parties to do so," or that, "[w]ithout an offer to dedicate for open-space purposes, subsequent use of the acquired property as open-space does not make the property `dedicated' for open-space use." Nor is there any merit in District's position there was no dedication because the acquisition agreement does not mention a dedication or specified use.
Moreover, as indicated above, we are not bound by the reasons given by the trial court for granting Ste. Marie's motion. (Camp, supra, 35 Cal.App.4th at p. 629, 41 *866 Cal.Rptr.2d 329.) Thus, it matters not that the trial court found there was a "common law dedication" of the propertya concept which, in our view, has no relevance to the issue "presented herein.[8]
The root of the problem, we think, is the Legislature's use of the term "dedicated" to describe what happens to property acquired by a regional park and open-space district under the provisions of the 1933 legislation. In this regard, it is curious that District, suggesting that "`to dedicate' " means to "`set apart to a definite use'" or to "`[give] over to a particular purpose,'" faults Ste. Marie for "defining the word `dedicated' as a legal term of art, as in dedication ... rather than using the ordinary and usual meaning required under rules of statutory interpretation [citation]." Indeed, it is District which uses "dedicate" in a legal sense and takes the untenable position that, notwithstanding the express language of section 5565, it was required to take some sort of affirmative action to "dedicate" the Wildomar Property for park and open-space purposes.
Section 5565[9] spates, in pertinent part: "The legal title to all property acquired by the district under the provisions of this article shall immediately and by operation of law vest in the district, and shall be held by the district in trust for, and is dedicated and set apart for, the uses and purposes set forth in this article. The board may hold, use, acquire, manage, occupy, and possess such property, as provided in this article."
Stated another way, property acquired by a district under Article 3 shall, at the time it is acquired, vest by operation of law[10] in the district, "and is dedicated and set apart for" the uses delineated in Article 3. It follows that the Wildomar Property, at the time of its acquisition by District in 1995, was "dedicated" for the uses and purposes set forth in section 5541.2.
However, dwelling on the Legislature's use of the word "actually" in the third paragraph of section 5540, District maintains that, notwithstanding the "dedicated" language in 5565, the limitations set forth in section 5540 do not apply unless the property was "actually dedicated" for the uses and purposes set forth in Article 3.
Section 5540[11] states: "A district may take by grant, appropriation, purchase, *867 gift, devise, condemnation, or lease, and may hold, use, enjoy, and lease or dispose of real and personal property of every kind, and rights in real and personal property, within or without the district, necessary to the full exercise of its powers. [¶] Lands subject to the grant of an openspace easement executed and accepted by the district in accordance with this article are enforceably restricted within the meaning of Section 8 of Article XIII of the California Constitution. An easement or other interest in real property may be dedicated for park or open-space purposes, or both, by the adoption of a resolution by the board of directors, and any interest so dedicated may be conveyed only as provided, in this section. [1] A district may not validly convey any interest in any real property actually dedicated and used for park or open-space, or both, purposes without the consent of a majority of the voters of the district voting at a special election called by the board and held for that purpose. Consent need not first be obtained for a lease of any real property for a period not exceeding 25 years; and consent need not first be obtained for a conveyance of any real property if the Legislature, by concurrent resolution, authorizes a conveyance after a resolution of intention has been adopted by at least a two-thirds vote of the board of directors of the district, specifically describing the property to be conveyed."
The problematic language of section 5540 is, of course, the term "actually." District asserts that in making a determination as to whether the statute applies, we must construe the term literally and determine what constitutes "`actual'" dedication. To that end, Black's Law Dictionary defines "actual" as: "Real; substantial; existing presently in fact; having a valid objective existence as opposed to that which is merely theoretical or possible. Opposed to potential, possible, virtual, theoretical, hypothetical, or nominal. Something real, in opposition to constructive or speculative; something existing in act. It is used as a legal term in contradistinction to virtual or constructive as of possession or occupation. Actually is opposed to seemingly, pretendedly, or feignedly, as actually engaged in farming means really, truly in fact." (Black's Law Diet. (6th ed.1990) p. 34, col. 2.) The American Heritage Dictionary of the English Language defines the term actual as "[e]xisting and not merely potential or possible," "[b]eing, existing, or acting at the present moment; current," and "[b]ased on fact...." [12]
Relying on definitions such as "in fact, in reality," and "involving or comprising action; *868 active," [13] District contends "[t]he use of the term actually infers an affirmative act versus something [which] occurs without action such as a `dedication as a matter of law.'" Further, asserting that statutory interpretation requires that words be given their usual and ordinary meaning, and that the Legislature's use of the word "actually" in section 5540 implies that "something more" is needed, such as "an affirmative action on [its] part," District relies upon the 1985 amendment to section 5540, which added, as a second paragraph, the following:
"[A]n easement or other interest in real property may be dedicated for park or open-space purposes, or both, by the adoption of a resolution by the board of directors, and any interest so dedicated may be conveyed only as provided in this section." (Italics added.)
Thus, District contends that because "actually dedicated" is placed in the statute following other uses of the word "dedicated," the phrase "actually dedicated" must, by necessity, have a different meaning. District also contends the "mechanism for `actual' dedication" is its authority to dedicate property pursuant to section 5540 as well as section 5547 ("The board of directors shall act only by ordinance, resolution, or motion duly recorded in the minutes of the meeting...."). Furthermore, once property has been "actually dedicated," only then does it become subject to the restrictions set forth in section 5540. In essence, relying on the language of the 1985 amendment, including its reference to "other interests in real property," District contends: "Looking at that basic language, the only logical conclusion is that property is dedicated after the district board takes an affirmative action, such as adoption of a resolution. Property so dedicated would be subject to the limitations in the third paragraph of section 5540." We cannot agree.
The Enrolled Bill Report for AB 2253, from which the 1985 amendment is derived, states, in pertinent part: "Existing law authorizes a regional park, park and open-space, or open-space district to take and hold, use, enjoy, and lease or dispose of real and personal property of every kind for district purposes. Existing law also authorizes park, and open-space districts to dedicate such property for park and open-space uses. Once such property has been so dedicated, a district may convey or dispose of any interest of this real property only upon one of the following: [¶] 1. The consent of a majority of the voters at a special election. [¶] 2. The lease on the real property is for less than 25 years. [¶] 3. The Legislature, by concurrent resolution, authorizes a conveyance after two-thirds of the district board of directors adopts a resolution of intention. [¶] Park and open-space districts are also authorized to acquire easements on personal property. [¶] AB 2253 would authorize the district board of directors to adopt a resolution to dedicate an easement or other interest in real property for park and open-space purposes. The bill would specify that conveyance of any interest so dedicated would be prohibited as provided above."
Notwithstanding the bill's reference to "other interest in real property," the amendment's legislative history makes it clear that its purpose was to clarify existing *869 law that easements may be dedicated by park and open-space districts. As for the "other interest in real property" language, we suspect that its insertion by the Legislature was intended only to provide a means for dedicating other types of non ownership interest in property similar to easements, such as covenants or licenses, as opposed to "other property." This rationale is borne out by the fact easements are unique and different from property, such as the Wildomar Property, to which District acquired title. Moreover, as Ste. Marie points out, the "actually dedicated" language preexisted the 1985 amendment; thus, even before section 5540 was amended, section 5565 was the only mechanism for dedication available under Article 3.
In short, although the rules of statutory interpretation require us to first look at the language itself, "we do not give the words a literal meaning if to do so would result in an absurd result that was not intended. [Citation.]" (Chaffee, supra, 134 Cal.App.4th at p. 114, 36 Cal.Rptr.3d 1.) In light of the legislative purpose in enacting the 1933 legislation, it simply makes no sense that the Legislature's use of "actually" was intended to have the effect to which District ascribes. Indeed, to accept District's interpretation would, in essence, render meaningless the language and import of section 5565. It follows that because the proposed transfer was subject to the restrictions of section 5540, summary judgment was properly granted.

B. District has failed to establish prejudicial error arising from the court's (1) consideration of District's resolution seeking legislative concurrence; (2) restriction on District's oral argument; and (3) denial of District's request to provide supplemental declarations.

1. Consideration of District's resolution seeking legislative concurrence.
First, District contends the court abused its discretion in considering its resolution seeking legislative concurrence as evidence of dedication. District explains that it passed the resolution "as a means of expediting the sale [to MSJCC], rather than as an admission of any requirement to seek legislative approval." District argues the court's consideration of the resolution "was highly prejudicial, since the court clearly indicated that the adoption of the resolution was a reason and factor in determining the important issue of this case, the applicability of the transfer provisions of [section] 5540." In response, Ste. Marie contends that District's failure to make a timely objection to the introduction of that evidence constitutes a waiver of the issue on appeal.
Notwithstanding District's failure to object, even if the trial court did consider the resolution in reaching its decision,[14] our review does not take into account the court's rationale for its decision. (Camp, supra, 35 Cal.App.4th at p. 629, 41 Cal. Rptr.2d 329.) Any error was therefore harmless.

2. Failure to allow District's counsel to complete oral argument.
Next, District contends the court abused its discretion in failing to allow it to reasonably complete oral argument. In support of its argument, District cites two cases in which summary judgment was reversed because the decision was rendered without conducting any hearing.[15] *870 (See, e.g., Mediterranean Construction Company v. State Farm Casualty Company (1998) 66 Cal.App.4th 257, 77 Cal. Rptr.2d 781 (Mediterranean); Brannon v. Superior Court (2004) 114 Cal.App.4th 1203, 8 Cal.Rptr.3d 491 (Brannon).) As Division Three of this court stated in Mediterranean: "Trial judges may not elevate judicial expediency over Code of Civil Procedure section 437c's mandate for hearings on summary judgment motions. Although they retain extensive discretion regarding how the hearing is to be conducted, including imposing time limits and adopting tentative ruling procedures [citation], they may not entirely bar parties from having a say. That is because `"limiting the time of an argument and refusing to permit any argument at all are entirely different matters. The one is the exercise of a discretion[;] the other is a denial of a right."' [Citation.]" (Mediterranean, at p. 265, 77 Cal.Rptr.2d 781.)
In both Mediterranean and Brannon, the Court of Appeal distinguished situations in which oral argument is precluded entirely from those in which argument is curtailed. The present case is an example of the latter. To the extent District contends the trial court abused its discretion in curtailing counsel's argument, we wholeheartedly disagree.[16]

3. Failure to permit District to submit additional declarations.
Lastly, District contends the trial court abused its discretion in refusing to allow a continuance for submission of additional declarations. Ste. Marie contends the court was correct in denying the request because the legislators' mental processes are irrelevant.
Initially, we note that District did not request a continuance for the purpose of filing additional declarations. Rather, the court indicated it was continuing the matter so that it could review Ste. Marie's evidentiary objections, which it had overlooked. Counsel for District then said that she would "welcome a continuance specifically considering [the court's] intended." Then, after counsel and the court engaged in a colloquy as to whether District is an agency of the county or the state, counsel asked for permission to file additional declarations to show District's motivation for seeking legislative concurrence from the state. The court indicated that if it felt it needed additional information, it would send out a minute order.
District has failed to establish an abuse of discretion. In County of Los Angeles v. Superior Court (1975) 13 Cal.3d 721, 119 Cal.Rptr. 631, 532 P.2d 495, the Supreme Court explained: "On one level, the doctrine which precludes judicial delving into the subjective mental processes of individual legislators is a corollary of the related legal principle which establishes that the validity of a legislative act does not depend on the subjective motivation of its draftsmen but rests instead on the objective effect of the legislative terms." (Id. at p. 727, 119 Cal.Rptr. 631, 532 P.2d 495.) Although the foregoing statement was articulated *871 in the context of a discovery battle, its rationale holds true here as well. The reasons why District's board acted as it did in passing the resolution seeking legislative concurrence simply has no relevance to the issue at hand, i.e., the meaning and applicability of section 5540.

DISPOSITION
The judgment is affirmed. Ste. Marie shall recover his costs on appeal.
We concur: RAMIREZ, P.J., and KING, J.
NOTES
[1] Unless otherwise indicated, further statutory references are to the Public Resources Code.
[2] Citing Evidence Code section 452, subdivisions (a), (b) and (c), the Riverside County Regional Park and Open Space District (District) has asked us to take judicial notice of various legislative bill analyses, committee reports, and legislative statutes pertaining to the underlying legislation. Having reserved our ruling for consideration with the appeal, we now grant the request.
[3] In this regard, we note that in opposing summary judgment, District submitted a declaration of its general manager, stating: "It is the County's customary practice when it intends to accept or dedicate any real property, to establish the dedication by adopting an express resolution and by recording said resolution in the Riverside County Recorder's Office...." (Italics added.) Additionally, declarations from both the Deputy Director of Transportation and the Supervising Real Property Agent for the County of Riverside alleged that "Riverside County's standard protocol regarding the acceptance of real property dedication always includes the use of a formal written document which states an express intent of dedication of the particular property and the purpose of the dedication." (Italics added.) However, no evidence was offered to demonstrate that District takes affirmative action of any kind to dedicate property which it acquires for park or open-space purposes.
[4] This may explain why, as Ste. Marie pointed out in his summary judgment motion, District, in seeking approval of the option agreement, erroneously relied on Government Code section 25365 instead of section 5563, which states: "If, in the opinion of the board, any land or property owned by the district, or any interest therein, becomes unnecessary for the purpose of the district, the board may, subject to the provisions of Section 5540, sell such lands or property, or interest therein."
[5] The proposed order was not signed by the court. However, the court eventually did approve the parties' stipulation for entry of the order nunc pro tunc as of the date of entry of judgment.
[6] Section 5541.2 states: "The Riverside County Regional Park and Open-Space District may plan, acquire, preserve, protect, and otherwise improve, extend, control, operate, and maintain open-space areas, greenbelt areas, wildlife habitat areas, and regional parks for the use and enjoyment of all the inhabitants of the district." Further, District "may select, designate, and acquire land, or rights in land, within or without the district, to be used and appropriated for those purposes."
[7] "A dedication is the application of private real property to a public use by the acts of its owner which clearly manifest the intent that it be used for a public purpose. The property interest dedicated may be either an easement or the fee title interest. [¶] ... The two methods of dedication are statutory dedication and common law dedication. A statutory dedication is accomplished through compliance with the specific requirements of a statute, such as by the recordation of a map in substantial compliance with the Subdivision Map Act. [¶] A common-law dedication involves less formal requirements, either for dedications which occurred before the adoption of the statute or for dedications which are otherwise recognized by case law. [¶] The two methods are independent." (Miller & Starr, Cal. Real Estate, 3d ed. (2001) § 26:1, pp. 3-4.)

Furthermore, "[a] dedication is a voluntary transfer of an interest in land and resembles both a grant and a gift. It is therefore governed by the fundamental principles which control such transactions.... The intention to dedicate land need not be expressly stated but can be inferred from the actions of the owner. [Citation.] There must also be an acceptance by the public of the offer to dedicate. [Citation.] Acceptance may be express or implied. [Citation.]'" (Baldwin, supra, 70 Cal.App.4th at p. 837, 83 Cal.Rptr.2d 178.)
[8] Said the court: "[T]he court finds that, yes, there was indeed a common law dedication. A common law dedication requires an offer and an acceptance. There was, in this case, an implied dedication. And the reason I say there was an implied dedication is because we can glean from the owner's intent to dedicate the property, and it's a question of fact in each case. So we look at what the circumstances were, and we know that the District adopted a formal resolution to accept the property. And was that acceptance a dedication? Acceptance can be shown by use, and petitioner refers to exhibits that show that it was used as a wildlife conservation area and trail...."
[9] The origin of section 5565 is Statutes 1933, chapter 1043, section 16, page 2677: "The legal title to all property acquired by the district under the provisions of this act shall immediately and by operation of law vest in such district, and shall be held by such district in trust for, and is hereby dedicated and set apart for, the uses and purposes set forth in this act...."
[10] Ste. Marie takes the position the Wildomar Property was "dedicated by operation of law pursuant to section 5565." District contends the statute does not provide that property is "dedicated by operation of law," but rather, that the phrase "`by operation of law'" modifies the term "`vest,'" and not the term "dedicated." Although we agree with District's position, for purposes of this appeal it constitutes a distinction without a difference.
[11] The first and third paragraphs of section 5540 evolved from Statutes 1933, chapter 1043, section 11, page 2671: "Any regional park district organized and established as herein provided shall have power: [¶] ... [¶] 4. Hold Property. To take by grant, appropriation, purchase, gift, devise, condemnation, or lease, and to hold, use, enjoy, and to lease or dispose of real and personal property ... within or without the district, necessary to the full exercise of its powers; provided, however, that no such district may validly convey any interest in any real property actually dedicated and used for park purposes without the consent of a majority of the voters of said regional park district voting at a special election to be called by said board and held for said purpose, ... [¶] 5. Plan, Adopt, Lay Out, and Control Park System. To plan, adopt, lay out, plant and/or otherwise improve, to extend, control, operate, and maintain a system of public parks, playgrounds, beaches, parkways, scenic drives, boulevards and other facilities for public recreation for the use and enjoyment of all the inhabitants of said district, and to select, designate, and/or acquire land, and/or rights in land, within or without said district, to be used and appropriated for such purposes...." (Italics added.)
[12] American Heritage Dictionary (4th ed.2000) online at Bartleby.com: (as of November 9, 2007).
[13] District cites to Black's Law Dictionary (5th ed. 1979) for the definition "involving or comprising action; active.''
[14] The court expressly stated that if there had not been a dedication, there would have been no reason for District to seek legislation permitting it to transfer the property.
[15] Ste. Marie responds, "If the District is able to produce even one authority to support the proposition that limits to oral argument imposed by a court in the context of an otherwise regular hearing on motion for summary judgment can warrant reversal of a judgment, it would be well served to do so in its reply brief." Not surprisingly, District's reply brief is silent on this issue.
[16] In any event, the issue is not as clear as District makes it cut to be. In Lewis v. Superior Court (1999) 19 Cal.4th 1232, 1248, footnote 10, 82 Cal.Rptr.2d 85, 970 P.2d 872, our high court acknowledged the conflicting decisions in Mediterranean [deciding a motion without affording oral argument is reversible error] and Sweat v. Hollister (1995) 37 Cal. App.4th 603, 43 Cal.Rptr.2d 399 [court may decide a motion without hearing oral argument], but left the question open. (See Brannon, supra, 114 Cal.App.4th at p. 1208, 8 Cal.Rptr.3d 491.)